IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO HEALTH CONNECTIONS,
a New Mexico Non-Profit Corporation,

    *Plaintiff*,

v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES, et al.,

    *Defendants*.

No. 1:16-cv-878-JB/JHR

**STATEMENT OF *AMICI CURIAE* AMERICA'S HEALTH INSURANCE PLANS AND BLUE CROSS BLUE SHIELD ASSOCIATION ON NEW DEVELOPMENTS IN SUPPORT OF RULE 59(e) MOTION**

A material recent development brings new urgency to resolution—and grant (at least as to remedy)—of Defendants' Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) ("Motion"). On July 7, 2018, the Centers for Medicare & Medicaid Services (CMS) surprised all carriers by issuing a press release stating that this Court's "ruling prevents CMS from making further collections or payments under the risk adjustment program, including amounts for the 2017 benefit year, until the litigation is resolved."[1] CMS followed that statement by announcing in a July 9, 2018 "Summary Report" on risk adjustment transfers from 2017 that, "[i]n light of the current status of the litigation" before this Court, CMS "will not collect or pay the specified [risk adjustment transfer] amounts."[2]

---

[1] CMS, Press Release, *United States District Court Ruling Puts Risk Adjustment On Hold* (July 7, 2018), https://www.cms.gov/Newsroom/MediaReleaseDatabase/Press-releases/2018-Press-releases-items/2018-07-07.html (attached as Addendum A).

[2] CMS, *Summary Report on Permanent Risk Adjustment Transfers for the 2017 Benefit Year* at 2 (released July 9, 2018), https://downloads.cms.gov/cciio/Summary-Report-Risk-Adjustment-2017.pdf (attached as Addendum B).

CMS's unexpected decision to freeze all risk adjustment transfers nationwide has serious and time-sensitive ramifications for the functioning of the market for individual and small group health plans.  That decision deprives many AHIP and BCBSA members of substantial risk adjustment payments that the Affordable Care Act guarantees and that they have relied on in making critical plan offering and pricing decisions.  But that obvious and considerable harm is not limited to recipients of risk adjustment transfers.  AHIP's and BCBSA's members also include many health plans that must *pay* risk adjustment transfers.  Those members also suffer from the nationwide freeze because it jeopardizes the future market participation of plans that receive risk adjustment payments, and the resulting change in risk-profile adversely affects the plans that remain and the calculation of their rates.  While targeted improvements to any program may be considered prospectively, all health plans have relied on the risk adjustment methodology that was in effect at the time that they made their business decisions.

Relatedly, the timing and unexpected nature of the freeze creates profound uncertainty for future health plan pricing—including rates for 2019 products—that is only compounded by the corresponding possibility of States having to develop a patchwork of requirements for 2019. The uncertain prospect of risk adjustment payments could result in increased premiums for many health plans and reduced coverage options—to the detriment of individuals and small businesses. Certainty around the availability and design of the risk adjustment program also factors into health plans' decision-making process regarding whether to participate in the individual and/or small group markets at all.

The risk adjustment program helps ensure coverage is available for high need patients by sharing among health plans the costs of covering such patients and helps to encourage the offering of a wide variety of plans and options to consumers.  CMS has computed that

approximately $5.2 billion in risk adjustment payments in each direction are due to be made for the 2017 benefit year, and that the absolute value of risk adjustment transfers averaged 10 percent of premiums in the individual market and 5 percent of premiums in the small group market.[3]  Accordingly, a health plan's pricing is inextricably linked to its risk adjustment transfers and health plans must therefore make assumptions as to such transfers when setting their premiums.

In addition, health plans currently face a number of key deadlines as they assess the impact of the continuing and unresolved uncertainty around the risk adjustment program.  The near-term nature of these deadlines adds urgency to the Court resolving this matter in an expeditious manner because the complexity of the processes involved makes it difficult for health plans to turn on a dime to meet those deadlines.  For example, health plans' last opportunity to change their 2019 individual market coverage submissions to most State regulators is August 22, and health plans selling products off the 2019 individual market exchanges must finalize their plans and rates by October 15.  And in both cases, States may have earlier deadlines to finalize plan offerings.  Similarly, CMS requires health plans to decide whether they are going to participate in the federally-facilitated marketplace by September 25.  Health plans are also required under 45 C.F.R. § 147.106 to send notices of discontinuation by October 1 for any plans that will not be offered starting January 1, 2019.[4]

Finally, the pendency of this Court's ruling and the timing of CMS's decision to freeze risk adjustment transfers significantly impacts health plan operations.  In addition to the problems already discussed, it is unclear how health plans are to treat risk adjustment payments or transfers in the calculation of their medical loss ratio (MLR), which is required to be

---

[3] Add. B at 2, 8.
[4] *See* Add. C (detailing key dates associated with the 2019 individual market).

completed by July 31.  CMS's guidance to date does not address that important issue.[5]  Accurate and complete calculation of MLRs is essential in determining whether a plan has met certain legally mandated requirements and if the plan has any corresponding financial obligations (*e.g.*, whether or not direct rebates must be paid to consumers).

In light of these developments, AHIP and BCBSA respectfully urge the Court to resolve Defendants' Motion—and grant the relief requested—as soon as possible to minimize disruptions to the market for individual and small group health plans.[6]

July 19, 2018                                                  Respectfully submitted,

*/s/ Merrill C. Godfrey*

Merrill C. Godfrey
AKIN GUMP STRAUSS HAUER
 & FELD LLP
1333 New Hampshire Ave, NW
Washington, DC 20036
(202) 887-4000
mgodfrey@akingump.com

*Counsel for Amicus Curiae America's Health Insurance Plans and Blue Cross Blue Shield Association*

---

[5] CMS, *Implications of the Decision by United States District Court for the District of New Mexico on the Risk Adjustment and Related Programs* (July 12, 2018), https://www.cms.gov/CCIIO/Resources/Regulations-and-Guidance/Downloads/Implications-of-the-Decision-by-United-States-District-Court-for-the-District-of-New-Mexico-on-the-Risk-Adjustment-and-Related-Programs.pdf (attached as Addendum D).

[6] On July 18, 2018, the Office of Information and Regulatory Affairs (part of the Office of Management and Budget) acknowledged receipt of a CMS submission for review of an interim final rule pursuant to Executive Order 12866.  *See* Ratification and Reissuance of the Methodology for the HHS-operated Permanent Risk Adjustment Program under the Patient Protection and Affordable Care Act (CMS-9920-F), RIN: 0938-AT65, https://www.reginfo.gov/public/do/eoDetails?rrid=128291.  *Amici* are not aware of the substance of the submission or the timing for that review, and Defendants have represented that they "are unable to provide an estimated timeframe *** at present."  Notice at 2 (Dkt. No. 78).  As that review remains pending in its initial stages, it does not negate the critical need for expeditious resolution of Defendants' Motion for the reasons stated above.