**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

|  |  |  |
|---|---|---|
| NEW MEXICO HEALTH CONNECTIONS, a New Mexico Non-Profit Corporation, | ) ) ) | |
|  | ) | No. 1:16-cv-00878-JB/JHR |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | ) ) ) | |
| Defendants. | ) ) ) ) | |

**NEW MEXICO HEALTH CONNECTIONS' OPPOSITION TO AMERICA'S HEALTH INSURANCE PLANS AND BLUE CROSS BLUE SHIELD ASSOCIATION'S MOTION FOR LEAVE TO FILE STATEMENT AS *AMICI CURIAE***

Plaintiff New Mexico Health Connections ("NMHC"), by and through its undersigned counsel, hereby submits the following memorandum of law in opposition to America's Health Insurance Plans ("AHIP") and Blue Cross Blue Shield Association's ("BCBSA") (collectively, the "BCBS Association") Motion for Leave to File Statement as *Amici Curiae* ("Motion").

I.    **INTRODUCTION**

The BCBS Association's proposed *amicus* statement, in addition to being both untimely and improper, has also been rendered *entirely irrelevant* by events post-dating the filing.  The BCBS Association originally sought leave to file its purported *amicus* statement because it was unhappy with HHS's[1] July 7, 2018 decision to suspend 2017 risk adjustment

---

[1] In keeping with the parties' past practice, all Defendants are collectively referred to as "HHS."

transfers (the "Risk Adjustment Suspension") in light of this Court's February 28, 2018 ruling. According to the motion for leave to file the proposed *amicus* "statement," the BCBS Association sought to provide the Court with their "informed perspective" on the dire consequences of the Risk Adjustment Suspension.  *See* ECF No. 80, at 2.  In the week following the BCBS Association's filing, however, HHS reversed course on the Risk Adjustment Suspension, issuing a new Rule to govern the risk adjustment program for benefit year 2017 and notifying issuers that risk adjustment payments will resume in October 2018.  *See* ECF No. 81 ("HHS Notice"); Adoption of the Methodology for the HHS-Operated Permanent Risk Adjustment Program Under the Patient Protection and Affordable Care Act for the 2017 Benefit Year, 83 Fed. Reg. 36,456 (July 30, 2018).

Given that the entire justification for the BCBS Association's extremely belated *amicus* request (which was contained in three short paragraphs) was the purported need to bring the Risk Adjustment Suspension to the Court's attention, the statement is now, in addition to its myriad other defects, wholly irrelevant and moot.  Accordingly, the Court should deny the Motion.

II.    **STANDARD OF REVIEW**

A nonparty may appear as *amicus curiae* only as a matter of privilege, not as a matter of right.  *See e.g., Lopez v. Santa Fe Police Dept.*, No. 09-1214, 2010 BL 17160, *1 (D.N.M. Jan. 25, 2010) ("Participation as an amicus to brief and argue as a friend of the court is a privilege . . ..")  Accordingly, the Court has broad discretion to deny a request to participate as *amicus curiae. See WildEarth Guardians v. Lane*, No. 12-118, 2012 U.S. Dist. LEXIS 189661, *4 (D.N.M. June 20, 2012) ("'The privilege of being heard *amicus* rests in the discretion of the court which may grant or refuse leave according[ly] as it deems the proffered information timely, useful, or otherwise.'")  (citation omitted).  As there is no pertinent rule of civil procedure at the

district court level addressing the participation of would-be *amici*, federal district courts look to

guidance from appellate courts and Federal Rule of Appellate Procedure 29, which governs

*amicus* briefs at the appellate level.  *See United States v. Bd. of Cnty. Comm'rs of Otero*, 184 F.

Supp. 3d 1097, 1115 (D.N.M. 2015).

   In evaluating whether to permit *amicus* filings, courts within this District have

noted that the role of *amicus curiae* is to "supplement[] the efforts of counsel, and draw[] the

court's attention to law that escaped consideration."  *WildEarth Guardians*, 2012 U.S. Dist.

LEXIS 189661, at *5.  To that end, courts have considered the following factors when

determining whether to permit *amicus* participation:

> (1) whether the proposed *amicus* is a disinterested entity; (2)
> whether there is opposition to the entry of the *amicus*; (3) whether
> counsel is capable of making arguments without the assistance of
> an *amicus*; (4) the strength of the information and argument
> presented by the potential *amicus curiae's* interests; and (5)
> perhaps most importantly, the usefulness of information and
> argument presented by the potential *amicus curiae* to the court.

*Bd. of Cnty. Comm'rs of Otero*, 184 F. Supp. 3d at 1115 (quotations and citation omitted).

   With these factors in mind, courts in this District have explained that:

> An amicus brief should normally be allowed when a party is not
> represented competently or is not represented at all, when the
> amicus has an interest in some other case that may be affected by
> the decision in the present case ... or when the amicus has unique
> information or perspective that can help the court beyond the help
> that lawyers for the parties are able to provide.  ***Otherwise, leave to
> file an amicus brief should be denied.***

*WildEarth Guardians*, 2012 U.S. Dist. LEXIS 189661, at *6-7 (emphasis added) (quoting *Ryan*

*v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997)).

   At the district court level, *amicus* requests are subject to greater scrutiny, and

"[w]here a party opposes the motion, the district court should 'go slow in accepting an *amicus*

brief....'"  *Titan Am., LLC v. Darrell*, No. 7:11-cv-52, 2011 U.S. Dist. LEXIS 100340, *15

(E.D.N.C. Sept. 2, 2011) (citing *Strasser v. Dooley,* 432 F.2d 567, 569 (1st Cir. 1970)).  *See also Sequoia ForestKeeper v. Elliott*, 50 F. Supp. 3d 1371, 1380 (E.D. Cal. 2014) ("the consideration of an amicus brief . . . is seldom appropriate at the level of the trial level where the parties are adequately represented by experienced counsel").

III.   **ARGUMENT**

   A.   The Motion Is Untimely

      While there is no rule directly governing requests to file *amicus* briefs at the federal district court level, federal appellate rules dictate that *amicus* briefs must be filed "no later than 7 days after the principal brief of the party being supported is filed."  Fed. R. App. P. 29(a)(6).  HHS, whom the BCBS Association seeks to support, filed its cross motion for summary judgment in June 2017.  *See* ECF No. 34.  Summary judgment briefing was completed in August 2017, and the Court ruled on summary judgment in February 2018.  HHS subsequently filed its Rule 59 motion in March 2018.  *See* ECF No. 57.  Briefing on that motion was completed over two months ago.[2]

      The BCBS Association filed this motion on July 19, 2018, that is, *over a year* after HHS's summary judgment brief was filed, *nearly five months* after the Court issued its opinion, and *over three months* after HHS filed its Rule 59 motion.  This eleventh hour and fifty-ninth minute request to participate as *amici curiae* is untimely and should be denied on that basis alone.  *See, e.g.*, *Finkle v. Howard Cnty.*, 12 F. Supp. 3d 780, 783 (D. Md. 2014) (denying *amicus* motion as untimely when filed 45 days after completion of dispositive motion briefing); *Carlin v. DairyAmerica, Inc.*, No. 1:09-cv-430, 2017 U.S. Dist. LEXIS 61915, *4 (E.D. Cal.

---

[2] Nor can the BCBS Association justify its tardiness by arguing that it was unaware of this case.  Not only are all of the filings in this matter public, but the litigation also received national press coverage well before the Court's ruling.  *See, e.g.*, Louise Radnofsky & Anna Wilde Mathews, *Two More Health Co-ops Sue Over Health Law's Risk-Adjustment Formula*, WSJ (Aug. 1, 2016), at https://www.wsj.com/articles/two-more-health-co-ops-sue-over-health-laws-risk-adjustment-formula-1470083380.

Apr. 21, 2017) (denying *amicus* motion as untimely when filed on the same day that the parties

concluded their dispositive briefing).

      B.    The Discretionary *Amicus* Factors Show that the BCBS Association's Motion
Should Be Denied

          1.    The Proposed *Amicus* Statement Fails to Provide Useful Information That
Will Assist the Court

In addition to being untimely, the proposed *amicus* statement is also unhelpful.

The "***most important factor***" in deciding whether to permit an *amicus* filing is "the usefulness of

information and argument presented by the potential *amicus curiae* to the court." *Bd. of Cty.*

*Comm'rs of Otero*, 184 F. Supp. 3d at 1118 (emphasis added). As the entire premise of the

*amicus* statement was to apprise the Court of the now-ended Risk Adjustment Suspension, the

information proffered by the BCBS Association is simply of no use or benefit to the Court.[3]

          2.    HHS's Counsel is Competent and Capable of Making Arguments Without
*Amicus* Assistance

Where "there is no indication that the parties to the law suit . . . will not

adequately present all relevant legal arguments, there is no persuasive reason to grant [a] motion

[for leave to file an *amicus* brief]." *Am. Coll. of Obstetricians & Gynecologists, PA Section v.*

*Thornburgh*, 699 F.2d 644, 645 (3d Cir. 1983). Thus, "[a]n *amicus* brief should normally be

allowed when a party is not ... represented competently or is not represented at all" or,

conversely, denied if the parties are competently represented. *Oklahoma ex rel. Edmondson v.*

*Tyson Foods, Inc.*, No. 05-329, 2008 U.S. Dist. LEXIS 36665, *7 (N.D. Okla. May 5, 2008).

---

[3] Even before the BCBS Association's proposed *amicus* statement was rendered irrelevant by the Rule reinstating risk adjustment payments for benefit year 2017, its content was still unhelpful to the Court. The statement, which described the alleged "serious and time-sensitive ramifications" of "[*HHS's*] *unexpected decision* to freeze all risk adjustment transfers," was of no relevance to the Court's decision-making process. *See* ECF No. 80-1, at 2. The BCBS Association is concerned with HHS's conduct, not with the Court's ruling. The Court's ruling did not mandate the Risk Adjustment Suspension. Rather, HHS, through its own decision-making channels and for whatever undisclosed reasons, chose to suspend the program instead of commencing a new notice and comment rulemaking proceeding. It is rather telling that nowhere in the BCBS Association's proffered *amicus* statement does it offer any comment on the Court's actual ruling, the arguments made by the parties, the administrative record, or the law at issue.

The BCBS Association does not even attempt to argue that HHS's counsel cannot adequately present their arguments, nor could it, given that Defendants are represented by the many and highly skilled attorneys of the United States Department of Justice.  *See JPMorgan Chase Bank, N.A. v. Fletcher*, No. 06-624, 2008 U.S. Dist. LEXIS 1069, *7 (N.D. Okla. Jan. 7, 2008) (denying *amicus* motion and noting that "[c]urrent counsel are fully capable of presenting the law and the facts to assist the Court in resolving the issues presented.")

        3.      <u>The BCBS Association Is Biased and Seeks to Continue Using Risk Adjustment to Cripple and Destroy New and Small Competitors</u>

"While there is certainly no requirement that *amici* be totally disinterested, the partiality of an *amicus* is a factor to consider in deciding whether to allow participation."  *Picard v. Greiff*, 797 F. Supp. 2d 451, 452 (S.D.N.Y. 2011).  Many of the various Blue Cross Blue Shield plans in the United States have long enjoyed dominant positions in their local markets and have sought to keep competition out.  *See, e.g., Steward Health Care Sys., LLC v. Blue Cross & Blue Shield of R.I.*, No. 13-405, 2018 U.S. Dist. LEXIS 69737, *40 (D.R.I. Apr. 23, 2018) (denying Blue Cross's motion for summary judgment in antitrust action, finding that plaintiff presented "plethora evidence that Blue Cross sacrificed short-term profits for the longer-term benefit of eradicating potential competition"); *In re Blue Cross Blue Shield Antitrust Litigation MDL 2406,* No. 13-20000 (N.D. Ala.) (pending antitrust claims against over 30 Blue Cross Blue Shield Association companies); *United States v. Blue Cross Blue Shield of Michigan*, No. 10-14155 (E.D. Mich.) (Department of Justice civil antitrust lawsuit against Blue Cross Blue Shield of Michigan for using contracts with key hospitals to block the entry and expansion of rival insurance carriers), pleadings available at https://www.justice.gov/atr/case/us-and-state-michigan-v-blue-cross-blue-shield-michigan.

        While the new individual and small group exchange markets created by the Affordable Care Act are supposed to foster competition, HHS's risk adjustment program is doing

the opposite.  Rather than supporting new entrants and providing consumers with more options,

the risk adjustment program as implemented has been preserving the dominance of Blue Cross

Blue Shield plans.  For example:

- In Maryland, now-defunct nonprofit CO-OP Evergreen Health was financially crippled in Summer 2016 when it was forced to pay $24 million in risk adjustment penalties to the state's longstanding dominant health insurance company, CareFirst BlueCross BlueShield.

- HealthyCT, a nonprofit Connecticut CO-OP, was shut down by state insurance regulators after being assessed a $13 million risk adjustment charge for benefit year 2015, which was paid to Connecticut's local Blue Cross Blue Shield plan.  That Connecticut Blue Cross Blue Shield plan is a subsidiary of Anthem, a publicly traded for-profit company that reported operating revenue in excess of ***$89 billion*** in 2017.  *See* Press Release, *Anthem Reports Fourth Quarter and Full Year 2017 Results Reflecting Balanced Performance Across Its Business Units* (Jan. 31, 2018), at http://ir.antheminc.com/phoenix.zhtml?c=130104&p=irol-newsArticle_financial_invest&ID=2329339.

- Land of Lincoln, the nonprofit CO-OP in Illinois, was forced to close after being ordered by HHS to pay more than $30 million in risk adjustment penalties to Blue Cross Blue Shield of Illinois, a subsidiary of Health Care Service Corporation ("HCSC"), which also owns the Blue Cross Blue Shield plan in New Mexico.  HCSC's total premium revenue in 2017 exceeded ***$30 billion***.  *See* Morgan Haefner, *BCBS Parent Company Posts $1.3B Profit in 2017: 4 Things To Know* (Apr. 20, 2018), at https://www.beckershospitalreview.com/payer-issues/bcbs-parent-company-posts-1-3b-profit-in-2017-4-things-to-know.html.

- Preferred Medical, a small Florida insurance company, was rendered insolvent when it was forced to pay $97 million in risk adjustment penalties to market dominant Blue Cross Blue Shield of Florida.

- When risk adjustment charges and payments for the 2017 benefit year move forward under the newly promulgated Rule, the Montana Health Cooperative – one of only four nonprofit CO-OPs left in business, including NMHC – would be forced to pay more than $26 million to HCSC's Blue Cross Blue Shield plan in Montana.

The BCBS Association's proffered "statement" is just another attempt to preserve

its members' market dominance and to protect the risk adjustment program that has been so

effective in thwarting their competitors' efforts to establish a foothold in the market and provide

options to consumers.

IV.     **CONCLUSION**

        For the reasons set forth herein, the BCBS Association's Motion should be

denied.

Dated:  August 1, 2018                    Respectfully submitted:

<div style="margin-left: 40%;">

/s/ *Nancy R. Long*
Nancy R. Long
LONG, KOMER & ASSOCIATES, PA
2200 Brothers Road/PO Box 5098
Santa Fe, NM 87502
(505) 982-8405
nancy@longkomer.com
email@longkomer.com
vmarco@longkomer.com

Barak A. Bassman
Sara B. Richman
Leah Greenberg Katz
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215-981-4000
bassmanb@pepperlaw.com
richmans@pepperlaw.com
katzl@pepperlaw.com

Marc D. Machlin
PEPPER HAMILTON LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, D.C. 20005-2004
202-220-1200
machlinm@pepperlaw.com

*Attorneys for Plaintiff*

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2018, I electronically filed the foregoing using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record, including counsel for BCBS Association.

*/s/ Nancy R. Long*
Nancy R. Long